IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALTURNAMATS, INC., a Pennsylvania Corporation,<br><br>                  Plaintiff,<br>      v.<br><br>GERALD HARRY, an individual, and SIGNATURE FENCING AND FLOORING SYSTEMS, LLC (a/k/a SIGNATURE SYSTEMS, LLC) t/d/b/a DURADECK, a Delaware Corporation,<br><br>                  Defendants. | C.A. No. 07-337 Erie<br>Judge McLaughlin |

**MEMORANDUM OPINION AND ORDER**

McLAUGHLIN, SEAN J., J.

### I. Background

On December 6, 2007, Plaintiff Alturnamats, Inc. ("Alturnamats") filed a Motion for Temporary Restraining Order and/or Preliminary Injunction ("the Motion") seeking injunctive and other equitable relief against Defendants Gerald Harry ("Harry") and Signature Fencing and Flooring Systems, LLC ("Signature") for alleged misappropriation of trade secrets, breach of contract, breach of duty of loyalty, intentional interference with contractual relations and intentional interference with prospective economic advantages. An evidentiary hearing on the claims set forth in the Motion was held on March 5th, 6th, 7th and 10th, 2008. The parties subsequently agreed that, pursuant to Federal Rule of Civil Procedure 65(a)(2), the preliminary injunction hearing would be converted to a final hearing on the merits.

On September 16, 2008, this Court issued a Memorandum Opinion (hereinafter, "Opinion") containing the Court's Findings of Fact and Conclusions of Law. In my Opinion, I granted

Alturnamats' Motion with respect to its claim that Signature and Harry had each misappropriated and utilized Alturnamats' confidential information and trade secrets. I ordered Signature to return any misappropriated property of Alturnamats and destroy the names, addresses, and contact information deemed to be "confidential" in the Opinion. I further enjoined Signature and Harry from soliciting business from Alturnamats' customers for a period of one year.

I denied relief on each of Alturnamats' other claims: breach of contract, breach of the duty of loyalty, and intentional interference with contractual relations and prospective economic advantages. In the instant motion, Alturnamats requests reconsideration on two grounds. First, it requests that I reconsider my previous finding that Signature had not breached its contract with Alturnamats. Second, Alturnamats requests that I reconsider my previous finding that Alturnamats cannot sustain a breach of loyalty claim against Gerald Harry.

The standard for granting a motion for reconsideration is a stringent one, and generally permits reconsideration only where necessary to correct a clear error of fact or law or to consider newly discovered evidence. See, e.g., Harsco Corp. V. Zlotnick, 779 F.2d 906, 909 (3rd Cir. 1985)). "A judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." See North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3rd Cir.1995). The movant must raise controlling facts or dispositive case law overlooked by the court in rendering a decision. Ciba-Geigy Corp. v. Alza Corp., 1993 WL 90412 (D.N.J. Mar. 25, 1993). Here, Alturnamats relies exclusively on the third prong, contending that there were clear errors of law or fact that must be corrected to prevent manifest injustice.

## II. Breach of Contract

Alturnamats first seeks reconsideration of my conclusion that Signature did not breach the Sales Agreement. In the Opinion, I denied relief on this claim after concluding that "Alturnamats has failed to prove that any confidential information outlined in the Agreement, such as the cost and pricing of ground protection mats, was disclosed to any third party." See Memorandum Opinion, September 16, 2008, p. 21 (hereinafter, "Memorandum Opinion"). Alturnamats asserts, however, that the Sales Agreement's prohibitions relating to confidential information are not *solely* directed at disclosure, but also prevent Signature from "using" Alturnamats' confidential information in any manner. I concluded in Paragraph 26 of our Findings of Fact that the Sales Agreement between Alturnamats and Signature obligated Signature "not to disclose to any other person, or *use in any way* any confidential information of Alturnamats, Inc. for the duration of this agreement and for a period of ten (10) yards following the termination of this agreement." Memorandum Opinion, ¶¶ 26-29 (emphasis added). I also found that, as a factual matter, Signature had used Alturnamats' confidential information by entering Alturnamats' client lists (as provided by Gerald Harry) into the Signature ACT database and by sending an announcement e-mail and hard copy mailing and brochure to some of the names appearing on the Alturnamats' client list. Memorandum Opinion, ¶¶ 41-48. In light of my finding that Signature had **used** the confidential information in apparent violation of the Sales Agreement, Alturnamats request that I amend my order to "enforce the actual terms of the Sales Agreement as written" and preclude Signature and Harry from disclosing or using the aforementioned confidential lists for a period of ten years.

Having carefully considered the matter, I conclude that Signature violated the Sales Agreement by using the confidential customer lists for an e-mail and hard copy mailing. As a remedy for misappropriating trade secrets, I have already ordered Signature to delete the Alturnamats' customer lists from their databases, return any and all hard copies of those lists, and to completely refrain from using the confidential lists for any purpose. Alturnamats contends, however, that it is also entitled to the relief provided in the Sales Agreement, namely, that Signature

3

be enjoined from "us[ing] in any way, any confidential information of Alturnamats, Inc. . . . for a period of ten (10) years following the termination of [the] agreement." See Opinion, ¶ 26.

At the hearing, Alturnamats made it clear that the remedy provided in the Sales Agreement does not prevent Signature from selling to Alturnamats customers, but only from utilizing Alturnamats' confidential information in doing so:

> Mr. Hicks: [T]he nondisclosure with Signature was that for 10 years they would not use Alturnamats' information regardless of how they acquired it. Whether that was through acquisition of our employees or whatever. And that's what they're trying to do. All we're asking is that Signature be held accountable and be held to its contract with Alturnamats, which for 10 years they not use our confidential information in doing business. That does not preclude Mr. Harry from competing and working as an employee of Signature and using other methods to gain customers, go through trade journals, do everything that he used to do at Alturnamats for seven years, but he has to start from ground zero.
>
> \* \* \* \* \* \* \*
>
> The Court: Does your interpretation of that agreement . . . preclude Harry from doing business with any of your former customers regardless of how that came about?
>
> Mr. Hicks: It would only preclude him from doing business if he used his knowledge that he acquired at Alturnamats.

See Hearing Transcript, December 17, 2008, pp. 14-15 (hereinafter, "Hearing Transcript") Following this exchange, counsel for Signature acknowledged that it would be possible to enjoin Harry from using the *confidential information* of Alturnamats' that he retained in his memory while also continuing to compete and solicit customers in the ground protection industry:

> The Court: Speak to this point, [Alturnamats] says that the use language goes beyond physically running around with a document in your hand, it also includes what you have acquired in your head; what is your rejoinder to that?
>
> Mr. Friedman: Well, I think that's the topic that we just finished discussing. I would conclude with the statement that the information that's in Mr. Harry's head is something that any former employee has to deal with. And Mr. Harry will have to be instructed that certain types of information are not for use in Signature. I have participated in a number of other cases where the trade secrets were more of a technical nature and employees instructed that well, the

4

> secret formula for this particular [product] is something you just can't tell the other fellows in the office. And though it's in your head, we're just simply not going to use it. I think that's a workable solution here.

(Hearing Transcript, pp. 17-18).

A contract that provides protection against use and disclosure of a company's confidential information and which is consented to by both parties "is not limited by the reasonableness criteria applicable to a restrictive covenant." See Bell Fuel Corp. v. Anthony Cattolico, 544 A.2d 450, 458 (Pa. Super. 1988). In other words, where an agreement simply restricts the use of confidential information and is not a non-compete agreement, the relief bargained for by the parties in the agreement will generally be enforced. Id. While I recognize the difficulties that may arise in determining whether, in any given case, "confidential" information was in fact utilized, that is an issue for another day.

For the reasons set forth above, I grant Alturnamats motion for reconsideration as to the breach of the contract claim.

### III. Breach of Duty of Loyalty

Alturnamats cites Maritrans v. Pepper Hamilton & Sheetz, 602 A.2d 1277, 1283 (Pa. 1922) for the proposition that an employee's duty of loyalty continues even after the employment is over. That case is distinguishable, however, because it dealt primarily with the unique obligations and duties that the attorney/client privilege imposes upon an attorney who is representing a litigant against a former client. I find no clear error of law or fact relative to my previous denial of the breach of the duty of loyalty claim. Therefore, the motion to reconsider that ruling is denied.

### IV. Conclusion

Alturnamats' motion for reconsideration as to the breach of contract claim is GRANTED. Alturnamats' motion for reconsideration as to the breach of the duty of loyalty claim is DENIED. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALTURNAMATS, INC., a Pennsylvania Corporation, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) C.A. No. 07-337 Erie<br>) Judge McLaughlin |
| GERALD HARRY, an individual, and SIGNATURE FENCING AND FLOORING SYSTEMS, LLC (a/k/a SIGNATURE SYSTEMS, LLC) t/d/b/a DURADECK, a Delaware Corporation, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## ORDER

AND NOW, this 23rd day of January, 2009, and for the reasons set forth in the accompanying Memorandum Opinion, Alturnamats' motion for reconsideration as to the breach of contract claim is GRANTED. Alturnamats' motion for reconsideration as to the breach of the duty of loyalty claim is DENIED. My September 16, 2008 Order is hereby amended as follows:

> IT IS HEREBY ORDERED that Signature is prohibited from using the confidential information of Alturnamats identified in our September 16, 2008 order, whether contained in digital or tangible list form, or contained in Gerald Harry's memory, for a period of ten years. This does not necessarily prevent Signature from selling to Alturnamats' clients after the conclusion of the one year injunction if they identify those clients by independent means or if they are contacted by those clients to purchase mats.

IT IS SO ORDERED.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ___